UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CONNECTICUT ELECTRIC, INC., </br>     Plaintiff, </br> </br>     vs. </br> </br> PACIFIC COAST BREAKER, INC. and PC SYSTEMS, INC., </br>     Defendants. | 1:10-cv-01440-LJM-TAB |

**ORDER ON MOTION TO DISMISS, OR IN THE ALTERNATIVE, TRANSFER**

This matter comes before the Court on Defendants', Pacific Coast Breaker, Inc. ("PCB") and PC Systems, Inc. ("PCS") (collectively, "Defendants"), Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative, Transfer to the Eastern District of California [Dkt. No. 40]. For the following reasons the Court **GRANTS** Defendants' Motion to Dismiss **WITHOUT PREJUDICE** and **DENIES** Defendants' Motion to Transfer.

### I. BACKGROUND

PCB, a wholesale supplier of new and reconditioned circuit breakers, is a closely-held California corporation founded in 1987 and headquartered in McClellan, California. It is owned by its shareholders, Craig Volpe, Randy McAyeal, and Gary Volp, and it has a total of sixteen employees. Volpe Decl. at ¶¶ 3-4. PCB's only office is located in McClellan, California, and all of its employees are located in McClellan. *Id.* Employees of PCB fill customer-initiated orders for reconditioned and new circuit breakers via the telephone or the internet. *Id.* at ¶ 4. PCB maintains a website at http://www.pacificcoastbreaker.com. *Id.* at ¶ 10.

PCS is a California corporation founded in 2005 and headquartered in McClellan, California. *Id.* at ¶ 5. PCS is owned by its shareholders, Craig Volpe, Randy McAyeal, and Gary Volp, and it has four additional employees. *Id.* at ¶ 3. PCS manufactures and distributes new motor control products to various wholesalers. *Id.* at ¶ 5. PCS has no employees or offices in Indiana. *Id.* at ¶ 15. It operates a web site at http://www.pcsep.com. *Id.* at ¶ 13. PCS conducts all of its business activities except manufacturing in McClellan, California. *Id.* at ¶ 5. PCS manufactures new products in China. *Id.* at ¶ 23. PCS does manufacture the Zinsco-type breakers at issue in this case, but it sells them directly to PCB. *Id.* at ¶¶ 8, 10. PCS has only sold these breakers to PCB. *Id.*

At issue in this lawsuit are Zinsco-type replacement circuit breakers (the "Breakers") manufactured by PCS and sold by PCB. The Zinsco-type breaker compete with Zinsco replacement breakers Connecticut Electric manufactures and sells. Volpe Decl. at ¶ 8. Connecticut Electric is a Delaware corporation with its only place of business in Anderson, Indiana. Dunham Decl. at ¶ 2. Connecticut Electric manufactures electrical products including residential circuit breakers. *Id.* In 2004, Connecticut Electric purchased the Zinsco brand from Thomas & Betts. *Id.* at ¶ 3. The Court includes additional facts as necessary.

## II. STANDARD

Where no evidentiary hearing has taken place, the plaintiff bears only the burden of making a prima facie case for personal jurisdiction. *uBid, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423 (7th Cir. 2010). Accordingly, the Court takes Connecticut Electric's asserted

facts as true and resolves any factual disputes in its favor.  *See Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).

Connecticut Electric asserts claims under the Lanham Act, 15 U.S.C. §§ 1114, 1116, 1117, and 1125(a) and (c) as well as claims under both Indiana statutory law and Indiana common law.  The Lanham Act does not authorize nationwide service of process.  *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004).  Accordingly, the Court may exercise personal jurisdiction over PCS and PCB if it would be permitted to do so under the Indiana long-arm statute.  *See* Fed. R. Civ. P. 4(k)(1)(A). In Indiana, the determination of whether a court has personal jurisdiction over a defendant is determined by Indiana's long arm statute, Indiana Trial Rule 4.4.  Trial Rule 4.4 lists several specific factors that, if present, would subject a defendant to the jurisdiction of Indiana Courts.  *See* Ind. Trial R. 4.4.  In addition, the rule states: "a court of [Indiana] may exercise jurisdiction on any basis not inconsistent with the Constitutions of [Indiana] or the United States." Ind. Trial R. 4.4(a).   Therefore, the Court has jurisdiction over Defendants to the limits allowed by the Due Process Clause of the Fourteenth Amendment.  *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 966-67 (Ind. 2006).

The Due Process Clause requires that a non-resident defendant have "certain minimum contacts with [Indiana] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  Personal jurisdiction may be either general or specific.  *See Alpha Tau Omega v. Pure Country, Inc.*, 185 F. Supp. 2d 951, 956 (S.D. Ind. 2002).  General jurisdiction renders a non-resident defendant amenable to suit within a particular forum regardless of the subject matter of the

suit, based on a defendant's continuous and systematic contacts with the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). Specific jurisdiction renders a non-resident defendant amenable only to suits arising out of or related to its contacts with the particular forum. *Id.* at 414.

In order for a Court to exercise specific jurisdiction, due process requires that a non-resident defendant must have established his contacts with the forum state by purposefully availing himself of the privilege of conducting business there. *See Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102 (1987). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). In other words, the defendant's conduct and connection with the forum state should be such that he should reasonably anticipate being haled into court there. *See id.* at 474. It must be the activity of PCS and PCB in the forum state that creates jurisdiction, not the conduct of Connecticut Electric or a third party. *See Purdue Research Found. v. Sanofi-Synthelabo*, 338 F.3d 773, 780 (7th Cir. 2003).

### III. DISCUSSION

Connecticut Electric does not assert, and the evidence does not support, a claim of general jurisdiction over Defendants in Indiana. Instead, Connecticut Electric argues that Indiana can exercise specific jurisdiction over both PCS and PCB. Specific jurisdiction is appropriate when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities. *See Burger King*, 471 U.S. at 475.

Before turning its attention to its ability to exercise jurisdiction over PCS, the Court considers the propriety of exercising specific jurisdiction over PCB. Connecticut Electric argues PCB does have minimum contacts with Indiana sufficient to support the Court's exercise of specific jurisdiction. Specifically, Connecticut Electric cites sales to Indiana residents, the existence of a one-year warranty with every sale, regular interaction with Indiana customers, and a "highly interactive" website as contacts supporting personal jurisdiction over PCB in Indiana. The Court addresses each of these contacts in turn.

Connecticut Electric notes that over the last five years, PCB has made approximately 648 sales of circuit breakers to Indiana residents. Pl.'s Ex. 3, Indiana Invoices. Connecticut Electric argues that because of the way that PCB describes the circuit breakers on their invoices, PCB cannot disprove that it sold 648 allegedly infringing breakers in Indiana and that, as a result, the Court should presume that all 648 sales involved the allegedly infringing breakers. However, the invoices do specify the type of breaker sold, and only seventy invoices identify Zinsco-type breakers as the subject of the sale. *See* Pl.'s Ex. 3, Indiana Invoices; Volpe Decl. at ¶ 21. PCB has admitted that it cannot distinguish based upon the invoices whether the sale of a Zinsco-type breaker was fulfilled with an actual Zinsco replacement breaker or one of the alleged infringing breakers. Volpe Decl. at ¶ 21. PCB asserts that only four of the sales of Zinsco-type breakers are confirmed to consist of the sale of an allegedly infringing unit. Volpe Decl. at ¶ 20. Because there is a dispute as to whether the other sixty-six Zinsco-type breakers orders in Indiana were fulfilled with allegedly infringing breakers, the Court assumes that they were for the purposes of this motion. *See Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (stating that on a motion to dismiss for lack of personal jurisdiction where there has

been no evidentiary hearing, the plaintiff is entitled to have factual disputes resolved in its favor).  Even if all seventy orders for Zinsco-type breakers were filled with allegedly infringing breakers, it constitutes only $3,780.00 in sales, or approximately .012% of PSB's total revenue since 2005.  At minimum, PCB sold 1,700 allegedly infringing breakers. Volpe Decl. at ¶ 22.  Accordingly, the maximum percentage of allegedly infringing breakers sold in Indiana is 4.1%.  These sales alone are not enough to constitute "substantial" contacts of the type required by the Constitution.  *See Richter v. Instar Enters. Int'l, Inc.*, 594 F. Supp. 2d 1000, 1007 (N.D. Ill. 2009) (Kapala, J.) (collecting cases).  Indeed, specific personal jurisdiction based upon the sales of allegedly infringing breakers to Indiana residents alone "would really prove too much: It would hale any asserted infringer of a claimed intellectual property right into a remote forum based upon truly *de minimis* contacts."  *See Guinness World Records, Ltd. v. Doe*, 664 F. Supp. 2d 927, 929 (N.D. Ill. 2009) (Shadur, J.) (concluding that nominal sales of an allegedly infringing product in the forum state, without more, are not substantial contacts for the purpose of due process in the context of specific personal jurisdiction).

The Court next considers PCB's grant of a one-year warranty on every sale in the state of Indiana.  Connecticut Electric cites *Aero Industries v. Demonte Fabricating* in support of its argument that the warranties create a continuing relationship with citizens of Indiana sufficient to establish minimum contacts.  396 F. Supp. 961 (S.D. Ind. 2005) (Tinder, J.).  In *Aero Industries*, a patent infringement case, the defendant faxed a price quotation for a tarpaulin system to an Indiana company, which constituted an offer to sell. *Id.* at 966.  Eventually, the defendant sold that system and another to the Indiana company. Those sales included driver training and warranties that included free inspections at six and

6

twelve months. *Id.* The court concluded that "Aero did more than merely enter into a contract with an Indiana Company . . . it sold and installed two tarpaulin systems it knew were to be used and located in Indiana, and it gave the Indiana company a warranty on those systems." *Id.* at 966-67. Stating that the warranties "insured an ongoing relationship with the Indiana residents," the court concluded that the contracts for sale in combination with the two warranties were enough to establish that the defendant purposefully directed its activities at Indiana. *Id.* at 967.

The case at bar is distinguishable from *Aero Industries*. The Supreme Court teaches that a party's contract with an out of state party alone cannot automatically establish sufficient minimum contacts in the other party's home forum. *Burger King*, 471 U.S. at 478. Instead, the Court must examine the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine "whether the defendant purposefully established minimum contacts with the forum." *Id.* at 479. The warranties in *Aero Industries* contemplated at least two follow up visits to the forum state for inspections and some measure of training for the intended operator of the machines at issue. Further, the negotiations in *Aero Industries* involved back and forth communication between the parties. *Aero Indus.*, 396 F. Supp. at 966. In contrast, there were apparently no negotiations that led to the sale of the allegedly infringing breakers. Indeed, each of the sales was customer initiated via either the website or the telephone, unlike the offer made in *Aero Industries* where the defendant reached into the forum to solicit business. Additionally, the warranties at issue in this case do not ensure any ongoing contacts. The sales invoices indicate that a one year warranty was attached as a matter of course to each new product PCB sold and do not appear to provide for any

ongoing service contacts. *See* dkt. nos. 64-1 – 64-20. Accordingly, the existence of the warranties does not add much weight to the argument that PCB purposefully availed itself of the benefits of Indiana law. *Cf. Fanimation Design & Mfg. v. Aloha Housewares, Inc.*, IP 02-0047-C-M/S, 2003 U.S. Dist. LEXIS 6469, *15-*16 (S.D. Ind. Mar. 27, 2003) (McKinney, J.). Therefore, the warranties attached to the seventy sales of allegedly infringing circuit breakers cannot, without more, establish sufficient contacts to sweep PCB into the personal jurisdiction of this Court.

Connecticut Electric also argues that minimum contacts arise out of telephone, mail, and e-mail contact between PCB and Indiana customers. However, Connecticut Electric does not direct the Court to any record evidence that suggests that these contacts were related to the allegedly infringing breakers. With no evidence suggesting that these contacts were either systemic or continuous, the contacts are not sufficient to meet the test for general jurisdiction. Further, the above mentioned contacts are not sufficient under the traditional rule for specific jurisdiction. In order to authorize an exercise of specific personal jurisdiction, the cause of action must arise out of or closely relate to the purposefully established contacts PCB made with Indiana. *Helicopteros*, 466 U.S. at 414. Connecticut Electric does not direct the Court to any evidence of telephone calls or email contacts between PCB and Indiana residents related to the allegedly infringing breakers. Accordingly, these telephone and email contacts cannot confer specific jurisdiction on this Court. *See id.*

Further, Connecticut Electric asserts that PCB has done business with Breakers Unlimited, a company headquartered in Indiana. Connecticut Electric's arguments regarding PCB's offer to sell the allegedly infringing breaker to Breakers Unlimited is

8

unsupported by admissible evidence. The only evidence Connecticut Electric cites in support of its contention that PCB offered to sell the infringing breakers to the Indiana corporation Breakers Unlimited is a declaration from one of Connecticut Electric's employees stating that "a representative from . . . Breakers Unlimited, let me know that [PCB] had copied our Zinsco circuit breaker, had offered to sell the breakers, and had sent samples of the breakers to Breakers Unlimited Indiana." Dunham Decl. at ¶ 5. Mr. Dunham's statement is offered to prove the truth of the matter asserted. Connecticut Electric points to no exception to the hearsay rule that applies to Mr. Dunham's statements. Accordingly, the Court concludes that it is inadmissible hearsay and cannot rely upon it for the purposes of determining whether the Court has personal jurisdiction over PCB or PCS. *See KnowledgeAZ, Inc. v. Jim Walter Resources*, 452 F. Supp. 2d 882, 888 (S.D. Ind. 2006) (Hamilton, J.); *No Baloney Mktg., LLC v. Ryan*, 1:09-cv-0200-SEB-TAB, 2010 U.S. Dist. LEXIS 30296, at *19 (S.D. Ind. Mar. 26, 2010) (Barker, J.) (noting that "in order to demonstrate minimum contacts adequately, evidence must be admissible").

Connecticut Electric also argues that PCB's "highly interactive website aimed indiscriminately at customers at large" should subject it to this Court's personal jurisdiction. However, Connecticut Electric's own language belies its argument. In order for a website to establish sufficient minimum contacts with the forum state, it must satisfy the requirements of due process. Connecticut Electric cites *Illinois v. Hemi Group, LLC* for the proposition that by creating an interactive website through which Indiana customers can purchase its products, PCB is reaching out to the residents of Indiana in such a way to confer personal jurisdiction on this court. 622 F.3d 754, 758 (7th Cir. 2010). There is one important difference between the website at issue in *Hemi* and the website at issue in this

case.  In *Hemi*, the website specifically excluded users from New York from purchasing products, manifesting express intent to do business with the forty-nine other states.  *Id.*  On the contrary, PCB's website is "indiscriminately" aimed at all customers.  Moreover, PCB never marketed the breakers on its website, and there is no competent evidence suggesting that PCB targeted Indiana with its website in any meaningful way.  *See* Volpe Decl. at ¶ 20.  A website alone, even one that is interactive, cannot create personal jurisdiction.  *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) ("If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state than the defendant may not be haled into court in that state without offending the Constitution.").

Connecticut Electric does not make any argument with regard to PCS's contacts with the forum state.  Instead, it rests on the argument that PCB's contacts should be imputed to PCS because of the lack of corporate formality between the two entities.  However, the Court has concluded that PCB does not have sufficient minimum contacts to fulfill the due process requirements outlined in *International Shoe* and its progeny.  Accordingly, it is unnecessary to address whether PCB's contacts with Indiana can be imputed to PCS because PCB's contacts would not be sufficient to confer this Court with jurisdiction over PCS.

Finally, Connecticut Electric argues that Defendants engaged in several business torts, including trademark infringement, trade dress infringement, unfair competition, forgery, and counterfeiting directed at Indiana and those torts are sufficient to satisfy the due process personal jurisdiction standard.  The Supreme Court has held that constitutionally sufficient contacts can be imputed to a defendant if the defendant is

accused of committing an intentional tort by actions that are "expressly aimed" at the forum states. *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984). The outcome in *Calder* is closely related to its facts: Florida citizens who lacked sufficient contacts with California were subject to personal jurisdiction in California because they published an allegedly libelous story about a California resident where sources were all in California and the "brunt of the harm" was suffered by the plaintiff in California. *Id.* The Supreme Court determined that the defendants' actions were not the product of untargeted negligence but instead were "calculated to cause injury to respondent in California." *Id.* at 791. The Seventh Circuit has held that "'express aiming' is a means of satisfying the traditional due process standard set out in *International Shoe* and its progeny, not an independent path to jurisdiction that allowed a defendant to avoid 'minimum contacts' altogether." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs.*, 623 F.3d 440, 445 (7th Cir. 2010).

Connecticut Electric asserts that Defendants expressly aimed their allegedly tortious action at Indiana when they passed off the counterfeit breakers to Indiana customers. This argument is unavailing. Although a cause of action arises where the passing off occurs, *see John Walker & Sons, Ltd. v. De Mert & Dougherty, Inc.*, 821 F.3d 399, 405 (7th Cir. 1987), the cases that have found express aiming have all relied upon evidence beyond plaintiff's mere residence in the forum state, *see Mobile Anesthesiologists Chi.*, 623 F.3d at 446 (collecting cases). Accordingly, the fact that allegedly infringing breakers were sold in Indiana is, in itself, not enough to confer jurisdiction on this Court.

Connecticut Electric also asserts that Defendants knew that Connecticut Electric was the sole supplier of new Zinsco breakers and elected to manufacture and sell the allegedly infringing breakers to directly divert sales from Connecticut Electric. Connecticut Electric

11

does not cite any evidence for the proposition that Defendants knew that Connecticut Electric was the sole supplier of new Zinsco breakers. Further, Connecticut Electric does not elucidate the causal connection between PCB's sale of the allegedly infringing breakers and diverting sales from Connecticut Electric. PCB also sold reconditioned Zinsco breakers, and it stands to reason that a consumer may purchase a reconditioned Zinsco breaker or another replacement if suitable from some entity other than Connecticut Electric. Connecticut Electric's conclusory statement that because Connecticut Electric was the sole supplier of new Zinsco breakers Defendants knew that the 'brunt of the harm' caused by the alleged infringement of the Zinsco mark would be felt in Indiana, without more, is insufficient to confer jurisdiction on this Court.

In *Mobile Anesthesiologists Chicago*, plaintiff tried to argue that through the use of a website bearing allegedly infringing mark, defendant had intentionally directed its tortious activities at Illinois after defendant had notice that plaintiff, the registered mark's owner, was located in Illinois. *Mobile Anesthesiologists Chi.*, 623 F.3d at 446. The Seventh Circuit concluded that more than simple knowledge of where the subject of an intentional tort resided was required to confer jurisdiction on a court under the "express aiming" test. *Id.* In this case, Connecticut Electric's argument does not amount to much more than suggesting that because Defendants knew that Connecticut Electric was located in Indiana, Defendants should be subject to jurisdiction in Indiana. According to the cases, more intentional activity on the part of Defendants is required to confer jurisdiction on this Court. *Id.* (citing *Calder*, 465 U.S. at 789-90; *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); *Panavision International, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998)). Accordingly, because Defendants lack minimum contacts with the forum state sufficient to

confer jurisdiction on this Court under either the traditional *International Shoe* framework or through Defendants' express aiming of an intentional tort toward the forum state as in *Calder*, the Court concludes that it lacks personal jurisdiction over both PCB and PCS.

As an alternative to their motion to dismiss for lack of personal jurisdiction, Defendants request that the Court transfer the case to the Eastern District of California. The Court need not have personal jurisdiction over a matter in order to transfer it under 28 U.S.C. § 1404(a). *See, e.g.*, *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986). However, Connecticut Electric argues against the transfer of its case, in any eventuality, asserting that due to the availability of witnesses and evidence, it is not "clearly more convenient" to try the case in the Eastern District of California. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss for lack of personal jurisdiction **WITHOUT PREJUDICE** and **DENIES** Defendants' alternative motion to transfer. Plaintiff is free to re-file in an appropriate forum.

## IV. **CONCLUSION**

For the foregoing reasons, the Court **GRANTS in PART** and **DENIES in PART** Defendants', Pacific Coast Breaker and Pacific Coast System, Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Motion to Transfer to the Eastern District of California [dkt. no. 40]. Specifically, Defendants' Motion to Dismiss is **GRANTED WITHOUT PREJUDICE** and Defendants' Motion to Transfer is **DENIED**. Plaintiff is free to re-file in the appropriate forum.

IT IS SO ORDERED this 24th day of February, 2012.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Vincent J. Allen
CARSTENS & CAHOON LLP
allen@cclaw.com

Douglas B. Bates
STITES & HARBISON, LLP
dbates@stites.com

Kari H. Halbrook
LEWIS BRISBOIS BISGAARD & SMITH LLP
khalbrook@lbbslaw.com

Deborah F. Sirias
LEWIS BRISBOIS BISGAARD & SMITH LLP
sirias@lbbslaw.com